UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE MAZZA CONSULTING GROUP, INC,

                Plaintiff,

      - against -

CANAM STEEL CORPORATION and
EASTERN BRIDGE, LLC,

                Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

08-CV-38 (NGG)

NICHOLAS G. GARAUFIS, United States District Court Judge.

    Defendants Canam Steel Corporation ("Canam") and Eastern Bridge, LLC ("Eastern Bridge") (collectively, "Defendants") have both filed motions to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay the case and compel Plaintiff Mazza Construction Group, Inc. ("Mazza" or "Plaintiff") to arbitrate its claims. For the reasons that follow, the court dismisses the Complaint without prejudice and compels Mazza to arbitrate its claims pursuant to the terms set forth in the parties' Completion Agreement.

    **I.    Standard of Review**

        **A.    Motion to Dismiss**

    In reviewing a motion to dismiss for failure to state a claim brought pursuant to Fed R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in favor of the non-moving party. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). In deciding such a motion, the court may take into account documents referenced in the complaint,

as well as documents that are in the plaintiff's possession or that the plaintiff knew of and relied upon in filing the suit. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Where a plaintiff references written documents in the Complaint, the court may take the documents into consideration in ruling on a Rule 12(b)(6) motion even if they are not attached to the Complaint and made a part thereof under Rule 10(c). Sazerac Co., Inc. v. Falk, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (citing Cortec Indus., Inc. v. Sum Holding L. P., 949 F.2d 42, 47 (2d Cir. 1991); I. Meyer Pincus & Assoc., P.C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991)). If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations. See Feick v. Fleener, 653 F.2d 69, 75 & n.4 (2d Cir. 1981).

### B. Motion to Compel Arbitration

In evaluating a motion to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, the court should apply a standard similar to that applicable to a motion for summary judgment. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise. Doctor's Assocs., Inc., v. Distajo, 944 F. Supp. 1010, 1014 (D. Conn. 1996), aff'd, 107 F.3d 126 (2d Cir. 1997).

## II. Background

Mazza commenced this action by Complaint dated November 1, 2007. (See Complaint ("Compl.") (Docket Entry # 1).) The Complaint alleges that Defendants breached certain agreements entered into between Mazza and Eastern Bridge concerning a construction project on the Whitestone Expressway. Mazza is a "consortium of experts who assist owners, general contractors, developers, architects and engineers . . . in coordinating and expediting . . . the performance and completion . . . of significant public and private commercial construction projects" in the tri-state area. (Id. ¶ 9.) Eastern Bridge and Canam manufacture, produce, fabricate, and deliver steel and steel-related products for various construction projects. (Id. ¶ 10.)

In the Complaint, Mazza alleges the following facts, which the court assumes to be true for the purposes of this motion to dismiss: (1) On or about January 23, 2003, Eastern Bridge entered into subcontract Purchase Order No. 02-315-23 ("Purchase Order") with general contractor Tully Construction Company/A.J. Pegno Construction Corp. JV ("Tully"), whereby Eastern Bridge was to provide labor and materials for the installation and fabrication of steel at the Whitestone Expressway project in Queens, New York ("Whitestone Project") (id. ¶¶ 1, 36); (2) On or about January 30, 2006, Mazza and Eastern Bridge entered into an "Engagement Agreement," ("Engagement Agreement") whereby Mazza was retained "to provide its expertise in gathering information and data for the preparation of a payment claim for the Whitestone Project," (id. ¶ 11), and Mazza was also retained under the Engagement Agreement to provide its expertise and guidance in negotiations and collections concerning the Whitestone Project (id. ¶ 11); and (3) On or about May 15, 2007, Mazza, Eastern Bridge, and Tully entered into a

3

Completion Agreement ("Completion Agreement") whereby Mazza was to perform additional services relating to the Whitestone Project (id. ¶ 36).

The Complaint further alleges: (4) that Eastern Bridge agreed to pay Mazza on an hourly basis for work performed by its experts in preparation of the payment claim (id. ¶ 12); (5) that Eastern Bridge agreed that, in addition to its obligations to pay Mazza for certain services on an hourly basis, Eastern Bridge would pay Mazza a ten-percent "success fee of any and all claim items, finally accepted, and paid as they appear in the Mazza report or claim book" (id. ¶ 12); (6) that Mazza provided the agreed-upon work, labor, and services to Eastern Bridge for the Whitestone Project pursuant to the terms of the January 30, 2006 written agreement, *i.e.* the Engagement Agreement (id. ¶ 13); and (7) that "[d]espite due demand, Eastern has failed, refused and neglected to pay Mazza the outstanding balance in the January 30, 2006 contract" in the sum of $238,588.00 plus statutory interest (id. ¶ 14). Specifically citing the Completion Agreement, Mazza further alleges that Eastern Bridge failed to deliver steel and steel-related products in accordance with agreed-upon delivery dates and, as a result, Mazza will not receive "acceleration payments" of $236,000. (Id. ¶¶ 37-40.)

Mazza commenced this action based upon its agreements with Eastern Bridge. By separate agreement dated July 16, 2007, Canam purchased certain assets of Eastern Bridge, including the Whitestone Project. Canam is not a signatory to the Engagement or Completion Agreements. (Declaration of Suzan Arden, attorney for Canam ("Arden Decl.") Ex. D.)

The Completion Agreement states in pertinent part:

> 11.) *Any disagreement(s) after the date of this agreement, such as but not limited to the production and delivery of steel, delays, defaults, faulting party or the period of extension to be allowed shall be the subject of*

4

> *binding arbitration conducted under the rules of the American Arbitration Association, at a location in Hartford, CT after the completion of the project.* Said disagreement(s) shall not be a cause to disrupt the delivery of product, or the payments described in the attached Schedule.
>
> 12.) No offsets by either party will be allowed under this agreement to interrupt either the payment schedule or the delivery. Any additional charges proposed by either party shall be handled under a separate arrangement so as to prevent any interruption in the work flow or payment stream.

(Completion Agreement; Arden Decl. (emphasis added).) Defendants have submitted motions to dismiss or, in the alternative, to compel arbitration under the terms of the arbitration agreement in the Completion Agreement.

## II. Analysis

### A. Scope of Arbitration Clause

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement provided the applicant for the stay is not in default in proceeding with such arbitration.

In three cases that have come to be known as the Steelworkers Trilogy,[1] the Supreme Court has made clear that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

---

[1] United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of Am. v. Am. Mfg., 363 U.S. 564 (1960).

interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). In

Pathmark Stores, Inc. v. United Food & Commercial Workers Local 342-50, this court explained

the rule announced in the Steelworkers Trilogy:

> The Supreme Court has extracted four principles from the
> Steelworkers Trilogy that control the issue of arbitrability now
> before this court. First, "arbitration is a matter of contract and a
> party cannot be required to submit to arbitration any dispute which
> he has not agreed to submit." [AT&T Technologies, Inc. v.
> Communications Workers of Am., 475 U.S. 643, 648 (1986)].
> Second, "the question of arbitrability . . . is undeniably an issue for
> judicial determination." Id. at 649. Third, "in deciding whether
> the parties have agreed to submit a particular grievance to
> arbitration, a court is not to rule on the potential merits of the
> underlying claims." Id. at 649. And, fourth, . . . "where the
> contract contains an arbitration clause, there is a presumption of
> arbitrability . . . . Such a presumption is particularly applicable
> where the clause is [ ] broad . . . . In such cases, [i]n the absence of
> any express provision excluding a particular grievance from
> arbitration, we think only the most forceful of evidence of a
> purpose to exclude the claim from arbitration can prevail." Id.

204 F. Supp. 2d 500, 503 (E.D.N.Y. 2002) (Garaufis, J.). There is a "two-part test for

determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed

to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the

arbitration agreement." Vera v. Saks & Co., 335 F.3d 109, 117 (2d Cir. 2003) (internal

quotations omitted).

Here, there is no doubt that the parties agreed generally to arbitrate disputes arising from

the Completion Agreement. The Completion Agreement states in pertinent part that "[a]ny

disagreement(s) after the date of this agreement, such as but not limited to the production and

delivery of steel, delays, defaults, faulting party or the period of extension to be allowed shall be

the subject of binding arbitration conducted under the rules of the American Arbitration Association, at a location in Hartford, CT after the completion of the project. Said disagreement(s) shall not be a cause to disrupt the delivery of product, or the payments described in the attached Schedule." (Completion Agreement ¶ 11; Arden Decl. (emphasis added).) Thus the parties clearly agreed to arbitrate disputes related to the Completion Agreement, and the court must next turn its attention to whether the specific disputes at issue come within the scope of the Completion Agreement.

On this point, Plaintiff argues that the first document, the Engagement Agreement, does not require arbitration. Canam responds: "[a]s a matter of textual accuracy, this is true; the Engagement Agreement itself contains no explicit arbitration provision." (Canam Steel Corporation's Reply Memorandum in Further Support of Its Motion to Dismiss or, Alternatively, Stay and Compel Arbitration at 2.) However, while the Engagement Agreement itself contains no explicit arbitration provision, the Completion Agreement, executed only a few months later, broadly contemplates that any disagreements be subjected to arbitration, even disagreements arising under the Engagement Agreement.

The Second Circuit has differentiated between broad and narrow arbitration clauses. See McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (internal citations omitted) (holding that "[i]n construing arbitration clauses, courts have at times distinguished between 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes."). The Second Circuit has previously found that a broad arbitration clause is "presumptively arbitrable." See Collins & Aikman Prod. Co. v. Building Sys., 58 F.3d 16, 20 (2d Cir. 1995)

(finding that "[a]ny claim or controversy arising out of or relating to th[e] agreement," is broad, and, thus, presumptively arbitrable). The Second Circuit has found that this presumption "is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation omitted) (internal citation omitted).

Here, the clause at issue was drafted broadly in a way that shows that the parties clearly intended that all disputes arising from the Engagement Agreement be arbitrated under the arbitration clause in the Completion Agreement. The precise issues raised by Mazza in the Complaint – which relate to production and delivery of steel, delays, defaults, and defaulting parties – are specifically contemplated by the arbitration clause in the Completion Agreement. The references to "defaults," "defaulting party," and "delays" in the Completion Agreement illustrate that point. More specifically, the arbitration clause in the Completion Agreement encompasses "any disagreement(s) . . . such as but not limited to the production or delivery of steel," (Completion Agreement ¶ 11), disagreements that indeed lie at the heart of Plaintiff's Complaint. For example, Plaintiff's seventh cause of action for breach of contract alleges <u>inter alia</u> that "Eastern failed to deliver the steel and related steel products, in accordance with the agreed[-]upon delivery dates, July 23, 2007, and September 24, 2007. As a direct result of Eastern's conduct, Mazza will not receive the agreed[-]upon acceleration payments which total $236,000." (Compl. ¶ 38.) The Completion Agreement is dated May 18, 2007, a number of months before the alleged failure to deliver steel and related steel products, and the Completion Agreement's arbitration clause covers the delivery of steel and related steel products. To cite another example, Plaintiff's eighth cause of action for breach of duty of good faith and fair

8

dealing alleges that "Eastern slowed, ceased, terminated and therefore delayed . . . the production of steel and related steel products in breach of the agreed[-]upon Schedule of Delivery and Payment." (Compl. ¶ 44.) That cause of action specifically alleges that Eastern Bridge commenced production on an unrelated Canadian project "[d]espite the unequivocal terms and conditions of the Completion Agreement." (Id. ¶ 45.)

      As Defendant Eastern Bridge argues:

> At the time of execution of the Completion Agreement, all of the parties intended to expedite a claims resolution procedure by mandating Arbitration. Moreover the timing of said arbitration to await the completion of the project was clearly intended to permit all parties to address all issues related to the project at one time and in one forum. The intent was to have one forum to hear all claims, rather than to litigate each alleged default by any party against the others in a piece-meal manner.

(Memorandum of Law in Support of Motion to Dismiss by Eastern Bridge at 4.) Furthermore, the Completion Agreement contemplates that all claims associated with the Whitestone Project prior to the Completion Agreement (*i.e.*, those arising under the Engagement Agreement) are "fully waived and released." (Completion Agreement ¶ 14 ("The parties agree that all claims of any nature whatsoever which they may have against each other associated with this project which have arisen, or relate to actions or inaction of either party, prior to the date of this agreement are hereby fully waived and released.").) Thus, by signing the Completion Agreement, Mazza waived any claims that predated the Completion Agreement and its arbitration clause. Plaintiff's vague argument that the arbitration clause in the Completion Agreement does not refer to and encompass the Engagement Agreement thus defies common sense.

The court finds that the Completion Agreement, on its face, covers the dispute at issue and clearly supplements the Engagement Agreement, defining and limiting the Engagement Agreement. See Pitta, 806 F.2d at 422-23. As such, the claims raised by Mazza in the Complaint are subject to arbitration.

### B.  Applicability of Clause to Consenting Non-Signatory Defendant

Secondly, as to Defendant Canam, the Second Circuit has construed the FAA to require arbitration where, as in the instant case, a consenting non-signatory defendant seeks arbitration. See JLM Industs., Inc. V. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004) (holding that the defendants, a group of owners whose corporate subsidiaries had signed arbitration agreements, may compel arbitration even though they had not signed the agreements). The Court of Appeals held that:

> Our cases have recognized that under the principles of estoppel, a non-signatory to that agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review 'of the relationship among the parties, the contracts they signed . . ., and the issues that had arisen' among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. . . . [W]here the merits of an issues between the parties was bound up with a contract binding one party and containing an arbitration clause, the 'tight relatedness of the parties, contracts, and controversies' was sufficient to estop the bound party from avoiding arbitration."

Id. at 277 (citations omitted). The determination of whether a non-signatory's issues are intertwined with the arbitration agreement is fact specific, id. at 278, and here the facts are compelling to make such a finding.

First, Mazza's causes of action arise from the Engagement Agreement and Completion Agreement and the performance of the Whitestone Project. Thus, "the merits of this dispute are

10

'bound up with' and linked textually to the terms of the contract that included the arbitration clause. (Defendant Canam Steel Corp's Memorandum of Law in Support of Its Motion to Dismiss or, Alternatively to Stay and Compel Arbitration ("Canam Mem.") at 8.) Second, there is a "tight relatedness of the parties" since Mazza and Eastern Bridge executed the Engagement and Completion Agreements, and Canam acquired Eastern Bridge's contract for the Whitestone Project. (Id.) Finally, Mazza has treated Eastern Bridge and Canam as "a single unit" since Mazza's Complaint alleges that Eastern Bridge and Canam are jointly and severally liable under all nine causes of action. (Id. (citing Compl. ¶¶ 1, 15, 19, 23, 25, 28, 34, 40, 46, and 53).)

Based on the relationship among the parties, the contracts they signed, and the issues that have arisen amongst them, Canam has established that the issues it seeks to resolve in arbitration are intertwined with the agreement that Mazza has signed, namely the Completion Agreement. Accordingly, Mazza must arbitrate its claims against Canam in addition to arbitrating its claims against Eastern Bridge.

### C. Timing of Arbitration

Finally, regarding the timing of the arbitration, Defendants argue that the Completion Agreement calls for arbitration to begin "after the completion of the Project." (See Completion Agreement ¶ 11.) They further argue that this language is unambiguous in requiring that arbitration may occur only after the completion of the Whitestone Project. The Completion Agreement further calls for the arbitration to be "conducted under the rules of the American Arbitration Association," (id.) which permits parties to determine contractually when arbitration may begin. The AAA's Commercial Arbitration and Mediation Procedures provide that "[a]rbitration under an arbitration provision in a contract shall be initiated in the following

11

manner: (I) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand")." (Arden Decl., Exh. J, AAA's Commercial Arbitration and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes), amended and effective September 1, 2007).) The Second Circuit has held that traditional concepts of contract law support the parties' right to determine when arbitration may begin. Mehler v. Terminex Int'l Co. L.P., 205 F.3d 44, 48 (2d Cir. 2000). As the court held in Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006), "[a]rbitration is entirely a creature of contract. The rules governing arbitration, its location, the law the arbitrators will apply, indeed, even which disputes are subject to arbitration, are determined entirely by an agreement between the parties."

As the parties have agreed to arbitrate this case under the terms of the Completion Agreement, the court defers to the arbitrator to determine the meaning of the arbitration clause's timing provision. If the arbitrator determines that the parties have agreed to arbitrate at the completion of the Whitestone Project, the court sees no reason to order otherwise.

Having made these findings, the court must order that the parties engage in arbitration in accordance with the Completion Agreement. See 9 U.S.C. § 4. Because Mazza and Defendants agreed to arbitration, this court has no jurisdiction to adjudicate any of Mazza's claims against Defendants, and therefore the claims against Defendants are properly dismissed. See, e.g,, Olin Corp. v. E.I. Dupont De Nemours and Corp., No. 05-CV-100S (SC), 2006 WL 839415 (W.D.N.Y. March 27, 2006).

### III. Conclusion

For the aforementioned reasons, Defendants' motions to dismiss the Complaint or, in the alternative, to stay the case and compel Mazza to arbitrate its claims are granted to the extent that the court dismisses the Complaint without prejudice and compels Mazza to arbitrate its claims pursuant to the terms set forth in the parties' Completion Agreement. Plaintiff is hereby granted leave to re-file within thirty days after the arbitration is completed if further relief from this court is necessary. See Valdes v. Swift Transp. Co., Inc., 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003), Mahant v. Lehman Bros., No. 99 Civ. 4421 (MBM); 2000 WL 1738399, at *3 (S.D.N.Y. November 22, 2000). The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: April 21, 2008                       /s Nicholas G. Garaufis
       Brooklyn, New York               NICHOLAS G. GARAUFIS
                                            United States District Judge